IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BRANDY D. CHEEKS                                                    PLAINTIFF

            v.                          CIVIL NO. 12-2188

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                     DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Brandy D. Cheeks, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her current application for DIB on December 4, 2008, alleging an inability to work since May 1, 2008, due to two left knee surgeries and back pain. (Tr. 116, 163).  For DIB purposes, Plaintiff maintained insured status through June 30, 2009.  (Tr. 132).

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

An administrative hearing was held on May 18, 2010, at which Plaintiff appeared with counsel and testified. (Tr. 21-57).

By written decision dated September 17, 2010, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 12). Specifically, the ALJ found Plaintiff had the following severe impairments: lordosis and headaches. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12). The ALJ found that through the date last insured, Plaintiff retained the residual functional capacity (RFC) to:

> perform a wide range of light work as defined in 20 CFR 404.1567(b) except that she cannot climb ropes, ladders, or scaffolds or work around hazards.[2]

(Tr. 13). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a machine tender, and a motel maid. (Tr. 16, 49).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on June 19, 2012. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 10-12).

---

[2] The Court finds the omission of the postural limitations (only occasional stooping, crouching, kneeling, crawling and climbing) in the RFC determination in Finding 5 to be a typographical error, as the ALJ's opinion and questions to the vocational expert clearly show that the ALJ found Plaintiff had postural limitations. Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir.2005) (citations omitted)(a "deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case").

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.   Evidence Presented:

At the time of the administrative hearing before the ALJ on May 18, 2010, Plaintiff testified that she was twenty-four years of age, and that she had obtained a high school education. (Tr. 30).  Plaintiff testified that she had completed a course to become a licensed massage therapist in 2006.  (Tr. 30).

The medical evidence during the relevant time period reflects the following.  Treatment notes from Sparks Preferred Medical Care dated May 9, 2008, report Plaintiff's complaints of a cough, sore throat, and burning in her chest, for the previous twenty-four hours. (Tr. 228). Plaintiff was diagnosed with bronchitis and prescribed medication.

On May 12, 2008, Plaintiff was seen by Dr. Frank M. Griffin for a three week follow-up regarding her knee scope.  (Tr. 311).  Plaintiff reported that her knee was doing "a lot better than before surgery."  Plaintiff reported that her knee no longer hurt.  Plaintiff was to return in six months for a follow-up appointment.

On May 13, 2008, Plaintiff complained of a persistent cough. (Tr. 282).  Dr. Terry Hoyt diagnosed Plaintiff with rhinosinusitis, and a chronic cough.   Plaintiff was prescribed medication.

Treatment notes from Sparks Preferred Medical Care dated July 9, 2008, indicated that Plaintiff straightened her leg at work the previous day and felt pain and popping in her left knee. (Tr. 227). Plaintiff reported that her knee now hurt when she walked. An examination of

-3-

AO72A
(Rev. 8/82)

Plaintiff's knee revealed no obvious effusion.  Plaintiff was diagnosed with left knee pain and treated with Naproxen.

On July 12,whoot 2008, Plaintiff entered the Sparks Regional Medical Center emergency room with complaints of left knee pain and swelling.  (Tr. 249-261).  Plaintiff was noted to have mild knee swelling and tenderness.  Plaintiff's range of motion of the knees was noted as within normal limits. An x-ray of Plaintiff's knee was noted to show normal alignment, normal soft tissue and no fracture. Plaintiff was prescribed Naproxen, and instructed to use a knee immobilizer and to follow-up with her orthopedic doctor.

On July 14, 2008, Plaintiff was seen by Dr. Griffin for a follow-up appointment regarding her left knee.  (Tr. 308-309).  Plaintiff reported that she began having left knee pain again about one week ago.  Plaintiff reported that her knee "blew up like a balloon."  Dr. Griffin noted Plaintiff had gone to the emergency room, and that her knee was placed in a knee immobilizer. Plaintiff reported she now worked a desk job. Dr. Griffin noted Plaintiff's left knee had full range of motion.  Dr. Griffin recommended observation, rest and ice.  Plaintiff was given a note to be off of work until she was cleared, and it was recommended that Plaintiff start physical therapy. Dr. Griffin noted that Plaintiff's symptoms seemed to be out of proportion to any physical abnormalities noted upon examination.

On August 7, 2008, Plaintiff was seen by Dr. Griffin for a follow-up regarding her left knee. (Tr. 306-307).  Plaintiff reported "swelling and a rash" over her left knee.  Plaintiff reported that physical therapy was not providing any significant improvement.  Plaintiff reported her knee felt great right after the surgery for several weeks.  Dr. Griffin noted that Plaintiff's problem was different than their last discussions, and that Plaintiff reported her knee now went

-4-

numb.  Upon examination, Dr. Griffin noted Plaintiff had full range of motion and that Plaintiff walked without a limp.  Dr. Griffin noted that there was no point tenderness and that there was "absolutely no swelling whatsoever." Dr. Griffin opined that Plaintiff may have some type of rheumatological disorder and recommended she see a rheumatologist.

On September 9, 2008, Plaintiff complained of left knee pain.  (Tr. 281).  Plaintiff reported she was not taking any pain medication.  Plaintiff was noted to have a normal gait and station.  Dr. Hoyt noted Plaintiff had scoliosis.  Plaintiff was also diagnosed with TMJ Syndrome.

On September 15, 2008, Plaintiff was seen at the Robert Chiropractic Center for neck, mid to lower back pain, and headaches.  (Tr. 264-275).  Plaintiff was noted to have swelling and left knee pain. Plaintiff received treatments through October 10, 2008.

On October 27, 2008, Plaintiff was seen by Dr. Hoyt for a follow-up regarding her knee. (Tr. 280).  Plaintiff reported that she also jammed her toe in the shower. Plaintiff reported she had not been able to work since July. Dr. Hoyt diagnosed Plaintiff with left knee pain, inflammatory arthritis, and a contusion of the left toe.

On November 4, 2008, Plaintiff complained of right knee pain and left scapula pain.  (Tr. 279). Dr. Hoyt noted Plaintiff was also in for her blood work results.  Plaintiff was diagnosed with TMJ, scoliosis, and diffuse arthritis.

On January 22, 2009, Dr. Jim Takach, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for

-5-

lift and/or carry; could occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl, but could never climb ladders/ropes/scaffolds; and that manipulative, visual, or communicative limitations were not evident. (Tr. 292-299). Dr. Takach further opined that Plaintiff should avoid concentrated exposure to hazards.   Dr. Takach made the following additional comments:

> 22 yo with a hx of (L) knee 4/08 arthroscopic debridement of synovial plicae & partial MM with residual partial ACL tear and pain/swelling of knee in f/u - uses brace. Hx of DLS Scoliosis and 2nd myofascial pain syndrome - conservative Rx Hx of uncomplicated TMJ dysfunction. From the available MER - she retains the ability to function with LIGHT work limits.

(Tr. 299).   After reviewing the evidence of record, Dr. Bill F. Payne affirmed Dr. Takach's opinion on May 18, 2009.  (331).

On February 5, 2009, Plaintiff was seen for a follow-up appointment with Dr.Griffin regarding her left knee.   (Tr. 303-305).   Plaintiff reported her symptoms were gradually worsening.  Dr. Griffin noted Plaintiff had not seen a rheumatologist yet but that she had an appointment scheduled in March.  Plaintiff reported experiencing "muscle spasms" around her knee with occasional popping.  Upon examination, Dr. Griffin noted that Plaintiff's left knee revealed full range of motion from full extension to 120 degrees of flexion.  Dr. Griffin noted Plaintiff walked without a limp and that there was "no tenderness whatsoever."  X-rays revealed no obvious changes.  Dr. Griffin opined that Plaintiff's pain was "out of proportion" in the left knee.  Dr. Griffin noted Plaintiff may have some rheumatologic issue.

After the expiration of Plaintiff's insured status Plaintiff underwent a general physical examination performed by Marie Pham-Russell, APN, in November of 2009, wherein Plaintiff has found to have no physical limitations.  (Tr. 255-260). In June of 2010, Plaintiff reported experiencing migraines almost every day to Dr. Hoyt.  (Tr. 361). There are no examination

-6-

findings indicated, but Dr. Hoyt did complete an assessment indicating that Plaintiff was unable to perform even sedentary work.  (Tr. 362-364).

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3),

AO72A
(Rev. 8/82)

1382(3)(c).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. § 404.1520.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520.

IV.   **Discussion:**

Plaintiff argues the following issues in this appeal:1) Plaintiff has additional impairments; 2) the ALJ improperly discredited Plaintiff's subjective complaints; 3) the ALJ made an improper RFC finding; and 4) the ALJ did not sustain his burden of proving that there are other jobs that Plaintiff can perform.

A.   **Insured Status:**

In her appeal brief, Plaintiff indicates that her date last insured is unclear.  (Doc. 10, p.1). A review of the record reveals that in the September 17, 2010 administrative decision, the ALJ found that Plaintiff's date last insured was June 30, 2009. (Tr. 10).  Plaintiff's counsel also indicated, in the Pre-Hearing Statement, that Plaintiff's date last insured was June 30, 2009. (Tr.

AO72A
(Rev. 8/82)

208).   While the ALJ indicated at the May 18, 2010 administrative hearing, that Plaintiff's date last insured was in December of 2009, the record indicates that Plaintiff last met insured status as of June 30, 2009.  (Tr. 26, 132).  Accordingly, the ALJ correctly used June 30, 2009, as the date last insured.

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability.  42 U.S.C. § 416(i)(3)(B).  Plaintiff last met this requirement on June 30, 2009.  Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of May 1, 2008, her alleged onset date of disability, through June 30, 2009, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death.  Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir.2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

**B.    Plaintiff's Impairments:**

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe.  See 20 C .F.R. § 404.1520(c).  To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related

AO72A
(Rev. 8/82)

activities. <u>See</u> Social Security Ruling 96-3p. The Step Two requirement is only a threshold test so the claimant's burden is minimal and does not require a showing that the impairment is disabling in nature. <u>See</u> <u>Brown v. Yuckert</u>, 482 U.S. 137, 153-54 (1987). The claimant, however, has the burden of proof of showing she suffers from a medically-severe impairment at Step Two. <u>See</u> <u>Mittlestedt v. Apfel</u>, 204 F.3d 847, 852 (8th Cir.2000).

Plaintiff argues that the ALJ improperly found Plaintiff's alleged knee and myofascial pain syndrome impairments, to be a non-severe impairments. While the ALJ did not find Plaintiff's alleged knee and myofascial pain syndrome impairments to be severe, the ALJ specifically discussed these alleged impairments in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. (Tr. 11). <u>See</u> <u>Swartz v. Barnhart</u>, 188 F. App'x 361, 368 (6th Cir.2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); <u>Elmore v. Astrue</u>, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); <u>see</u> <u>also</u> 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

Based on the foregoing, the ALJ's not finding that Plaintiff's alleged knee and myofascial pain syndrome impairments to be a severe impairments does not constitute reversible error.

-10-

C.      **Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective

complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily

activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating

factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional

restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may

not discount a claimant's subjective complaints solely because the medical evidence fails to

support them, an ALJ may discount those complaints where inconsistencies appear in the record

as a whole. Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our

touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards

v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, and the Defendant's well-stated reasons set

forth in her brief, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective

complaints, including the Polaski factors.  A review of the record reveals that during the relevant

time period, Plaintiff reported that she was able to do household chores; take care of her personal

needs; prepare simple meals; watch television and play on the computer; walk and drive in a car

alone; and shop for food and clothing.   The record further revealed that during the relevant time

period Plaintiff's impairments were treated conservatively.  Gowell v. Apfel, 242 F.3d 793, 796

(8th Cir. 2001) (holding fact that physician prescribed conservative treatment weighed against

plaintiff's subjective complaints).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she

has not established that she was unable to engage in any gainful activity during the relevant time

period.   Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

      **D.**      **The ALJ's RFC Determination:**

      RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

      "The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'"  Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir.2000) (citations omitted).  An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions.  Id. at

-12-

1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting. Id. (citing 20 C.F.R. § 404.1527(d)(2)).

The Court finds, based upon the well-stated reasons outlined in the Defendant's brief, that Plaintiff's argument is without merit, and there was sufficient evidence for the ALJ to make an informed decision. The Court further notes that in determining Plaintiff's RFC, the ALJ specifically discussed the relevant medical records, and the medical opinions of treating and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted). With regard to the June of 2010 opinion of Dr. Hoyt, the ALJ specifically addressed this report and found Dr. Hoyt's findings to be inconsistent with his own medical records and the medical evidence as a whole. Davidson v. Astrue, 501 F.3d 987, 990-91 (8th Cir. 2007) (finding ALJ correctly discounted a physician's assessment report when his treatment notes contradicted the report). The Court notes that Dr. Hoyt's June of 2010 assessment was completed almost one year after Plaintiff's insured status had expired, and the record indicated that Dr. Hoyt had not treated Plaintiff since November of 2008.

The Court would also note that in November of 2009, well after the expiration of Plaintiff's insured status, Nurse Pham-Russell, APN, found Plaintiff had a full range of motion of her spine and extremities; that Plaintiff could perform all limb functions; and that Plaintiff had a steady gait and no muscle weakness or atrophy. Nurse Pham-Russell opined that Plaintiff had no physical limitations. While this examination was not completed by an acceptable medical source, this evidence can be used to show how Plaintiff's impairments affected her ability to

-13-

work.  20 C.F.R. § 416.913(d)(1) (nurse-practitioners are not acceptable medical sources, but evidence from them may be used to show severity of impairment and how it affects ability to work).

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

**E.      Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as machine tender and a motel maid prior to the expiration of her insured status.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.    Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

-14-

DATED this 10th day of July, 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)